**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────

**No. 24-1829**

─────────

MAURICE WELLS, JR.,

            Plaintiff - Appellant,

        v.

SHERIFF TERRY S. JOHNSON, in his official capacity as sheriff of Alamance County, North Carolina,

            Defendant - Appellee.

─────────

Appeal from the United States District Court for the Middle District of North Carolina, at Greensboro.  Catherine C. Eagles, Chief District Judge.  (1:23-cv-00427-CCE-LPA)

─────────

Argued:  March 18, 2025                    Decided:  August 12, 2025

─────────

Before NIEMEYER and RICHARDSON, Circuit Judges, and FLOYD, Senior Circuit Judge.

─────────

Vacated and remanded by published opinion.  Judge Richardson wrote the opinion, in which Judge Niemeyer and Judge Floyd joined.

─────────

**ARGUED:**  Jeffrey Wald, NELSON MULLINS RILEY & SCARBOROUGH, LLP, Winston-Salem, North Carolina; Meghna Melkote, DUKE UNIVERSITY SCHOOL OF LAW, Durham, North Carolina, for Appellant.  Steven Andrew Bader, CRANFILL SUMNER LLP, Raleigh, North Carolina, for Appellee.  **ON BRIEF:**  Lorin J. Lapidus, NELSON MULLINS RILEY & SCARBOROUGH LLP, Winston-Salem, North Carolina; Sarah Ludington, C. Amanda Martin, Samara Jacobson, First Amendment Clinic, DUKE

UNIVERSITY SCHOOL OF LAW, Durham, North Carolina, for Appellant.  Elizabeth C. Stephens, Raleigh, North Carolina, Patrick H. Flanagan, CRANFILL SUMNER LLP, Charlotte, North Carolina, for Appellee.

———————

RICHARDSON, Circuit Judge:

Maurice Wells poses a tricky question. He got arrested at a protest in 2020 and was convicted of multiple charges in state court. He appealed the conviction. And now, while the appeal remains pending, he sues to challenge the arrest—claiming that it was retaliation for his speech. His question for us is whether, in this situation, the state-court conviction precludes a federal-court finding that the arrest violated his rights.

But federal courts do not exist to answer questions. They exist to redress injuries. And to redress his arrest, Wells does not seek a compensatory remedy like damages. He instead asks for a declaratory judgment that the arrest was unconstitutional. Yet he does not show how this would redress what happened in the past. Wells adds that the declaration he seeks might help him in other ways—perhaps warding off future arrest or prosecution. But he does not show how a declaration can help him on these fronts either. So he lacks standing to seek it.

## I.      Background

### A.      Wells Gets Arrested

During the summer of 2020, protestors gathered outside the Alamance County courthouse in Graham, North Carolina. Their purpose was threefold: Show solidarity with George Floyd, remove a confederate monument, and oppose the Alamance County Sheriff. One protestor was Maurice Wells, who met with others across from the courthouse in

3

Sesquicentennial Park. There they stood and listened to a speech by one Rev. Gregory Drumwright.

Then counterprotestors arrived, including members of a confederate heritage organization. Some tried to drown out Rev. Drumwright's speech by ringing the old courthouse bell, which stood on display in the park. But Wells took umbrage. He approached two counterprotestors—Gary Williamson, Sr., and Gary Williamson, Jr.—and announced, "this is our [expletive] bell"; "I am going to ring the [expletive] bell." J.A. 15, 128. In reply, the Williamsons "holler[ed] . . . and cuss[ed] back to him." J.A. 481.

This attracted the attention of the Sheriff himself, Terry Johnson, who was monitoring the protest. He worried that Wells and the Williamsons might fight. And as a crowd around them grew, Johnson began to worry that a skirmish could ripen into a riot. So he asked "everyone"—about 90 people in all—"to leave the area and go their separate ways." J.A. 128. Then he moved the Williamsons away from Wells. He told the younger Williamson, "Gary don't make me take you to jail." *Id.* But as Johnson confronted the Williamsons, Wells kept shouting about the bell.

Johnson warned Wells that if he didn't "co-operate and disperse," "he would be charged and taken to jail." *Id.* Wells dared him to try it: "Take me to [expletive] jail because I ain't stopping." *Id.* So Johnson obliged, cuffing Wells and handing him over to other officers on the scene.

## B. North Carolina Prosecutes

After arresting Wells, the officers took him before a magistrate. The magistrate determined that the officers had probable cause to arrest. And then the state brought

4

criminal charges: "one count of failure to disperse on command and one count of disorderly conduct." J.A. 35.

This put Wells into the two-tier trial system that North Carolina uses for misdemeanor offenses. At the first tier, the state prosecutes the case before a judge in the North Carolina District Court. *See* N.C. Gen. Stat. 7A-196(b). If the judge acquits, that's the ballgame for the defendant. The state cannot appeal. *See* N.C. Gen. Stat. 15A-1432; *North Carolina* v. *Woolard*, 894 S.E.2d 717, 723 (N.C. 2023). But if the judge convicts, the defendant may "appeal" to Superior Court and make the state try him again before a jury. N.C. Gen. Stat. § 7A-271(b); *id.* § 7A-196(b); *id.* § 15A-1431(b).

So far, Wells has faced only the first stage of this process. The district court rejected his First Amendment defense and convicted him. [J.A. 121-23.] Wells has noted an appeal, which is ongoing.

## C.    Wells Sues

In the meantime, Wells sued Johnson in North Carolina Superior Court. His claim there, under 42 U.S.C. § 1983, was that Johnson violated his First Amendment rights by arresting him. As Wells saw things, his actions at the protest were "expressive conduct." J.A. 20. And he offered two First Amendment retaliation theories. First, he said, Johnson arrested him for his speech without probable cause that he had committed a crime. Second, he offered as an alternative, Johnson engaged in viewpoint discrimination by arresting him but not the Williamsons. *See Nieves v. Bartlett*, 587 U.S. 391, 406–07 (2019) (recognizing the ordinary rule that a lack of probable cause is necessary to support a retaliation claim, and a "narrow" exception for viewpoint discrimination).

5

After articulating these theories, Wells sought only one remedy:  a declaration that Johnson's actions were unconstitutional.  Wells claims that "[a]n actual, justiciable controversy currently exists between the parties because Sheriff Johnson improperly suppressed" his "speech by arresting him [in] 2020."  J.A. 28.  But Wells adds that this remedy can help redress future injuries too.  Without it, he claims, he "is uncertain as to how he can exercise his constitutional rights when speaking and acting during future protests."  *Id.*

In response to Wells's suit, Johnson removed the case to federal court.  In his view, Wells originally could have filed there because his claim arose under federal law.  *See* 28 U.S.C. § 1441.  After Johnson removed, the district court took discovery and then entered summary judgment.  On Wells's first theory, the court held that Wells's state-court conviction entailed probable cause and precluded Wells from challenging probable cause in later suits.  *Wells v. Johnson*, 2024 WL 4005257, at *3 (M.D.N.C. July 30, 2024).  And on Wells's second theory, the court held that even after discovery, Wells lacked objective evidence to support the *Nieves* exception.  *Id.* at *4.  After entering summary judgment, the district court dismissed Wells's case with prejudice.

Wells now appeals.

## II.    Discussion

Federal courts cannot reach the merits just because parties present them.  Instead, federal courts must confirm for themselves that they have jurisdiction.  That duty includes ensuring that a plaintiff has standing.  *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 101–02 (1998).  And this duty goes for courts of appeals as much as trial courts.

6

At first, the parties focused on the merits. But when we looked for jurisdiction, we did not immediately find it. We thought Wells might lack standing to seek the declaratory judgment he asks for. So we asked the parties for supplemental briefing on the question. Now, preferring to litigate in state court, Wells concedes that he lacks standing. For his part, Johnson agrees, apparently thinking that if Wells lacks standing in federal court, he would lack it in state court too. So now, the parties' only dispute is what we should do about that fact. But with our obligation to confirm federal jurisdiction comes an obligation not to take the parties' word for it. We must check jurisdiction for ourselves.

When we undertake that inquiry, we find that Wells's updated position is the correct one. The declaratory judgment he seeks does not provide constitutionally adequate redress for cognizable injuries.[1] Declaratory judgments provide redress through preclusion, not merely because they might affect a defendant's behavior. This means Wells cannot use one to ward off future or ongoing prosecution, because any preclusive effect that might attend the judgment sought would not bind North Carolina. Neither can Wells use one to ward off future arrest, because he gives no reason to think he will protest again. Nor can

---

[1] Because Wells filed in state court and never updated his complaint, his request for relief invokes the North Carolina declaratory judgment statute—not the federal one. *Compare* N.C. Gen. Stat. § 1-253, *with* 28 U.S.C. § 2201 *et seq.* Because our analysis concerns the scope of declaratory judgments in federal court, we stress at the outset that nothing in this opinion concerns North Carolina's statute. State-law rules are, of course, only binding on federal courts in "cases where they apply." 28 U.S.C. § 1652. For a state-law claim, federal courts might take remedial cues from state law. But federal courts obviously cannot apply a state-law remedial rule to a federal-law claim. So by asking a federal court for a declaratory judgment on a federal claim, Wells must satisfy federal law—not state law.

Wells use a declaration alone to remedy his *past* arrest—that is over and done with, and Wells does not show how preclusion can provide redress in that situation.[2]

### A.    Wells Lacks Standing To Pursue The Sole Remedy He Seeks

Courts do not exist to answer questions.  The federal courts' "judicial power exists only to redress or otherwise to protect against injury to the complaining party." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).  This power, the only power constitutionally assigned to the federal courts, "is the power of a court to decide and pronounce a judgment and carry it into effect between persons and parties who bring a case before it for decision." *Muskrat v. United States*, 219 U.S. 346, 356 (1911) (quotation omitted).  This is what it means to resolve a "Case[]" or "Controvers[y]." U.S. Const. art. III, § 2; *see Hayburn's Case*, 2 U.S. 409, 410–14 (1792).

"Standing doctrine honors the limitations inherent in this assignment by ensuring judges attend to actual harms rather than abstract grievances." *United States v. Texas*, 599 U.S. 670, 686 (2023) (Gorsuch, J., concurring in the judgment).  "The fundamentals of standing are well-known and firmly rooted in American constitutional law.  To establish standing, . . . a plaintiff must demonstrate (i) that she has suffered or likely will suffer an injury in fact, (ii) that the injury likely was caused or will be caused by the defendant, and

---

[2] One preliminary note.  "[T]he party invoking federal jurisdiction bears the burden of establishing its existence." *Steel Co.*, 523 U.S. at 104.  Here, that party is Johnson, not Wells, since Johnson removed the case to federal court.  But of course, when it comes to standing, the jurisdictional question is whether the *plaintiff* has shown all three prongs with the degree of proof required by the stage of litigation. *Murthy v. Missouri*, 603 U.S. 43, 58 (2024).  So Johnson's proof must come from Wells's allegations and evidence.  For convenience, we therefore refer in this opinion to Wells's pleadings and proof—not Johnson's.

(iii) that the injury likely would be redressed by the requested judicial relief." *Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 380 (2024).

Injury-in-fact and causation seem clear. Wells's arrest is a cognizable injury, and Johnson caused it. His prosecution is cognizable too, assuming that Wells could trace it to Johnson. But to get a declaration that Johnson violated his First Amendment rights, Wells needs something more. He must show that "the remedy he sought . . . can redress the constitutional violation that [he] alleges occurred." *Uzuegbunam v. Preczewski*, 592 U.S. 279, 285 (2021).

This case thus turns upon redressability, a requirement that underscores the constitutional importance of remedies. The thrust of standing doctrine is not just that a plaintiff needs an injury to get into court. It is also that a plaintiff must "justify the exercise of the court's remedial powers on their behalf." *Town of Chester v. Laroe Estates, Inc.*, 581 U.S. 433, 439 (2017) (cleaned up) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 38 (1976)). And this turns our attention to remedies. For "[i]t is a federal court's judgment, not its opinion, that remedies an injury; thus it is the judgment, not the opinion, that demonstrates redressability." *Haaland v. Brackeen*, 599 U.S. 255, 294 (2023). It is therefore the judgment that separates an advisory opinion from a legitimate exercise of judicial power. *See Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211, 219 (1995); *St. Pierre v. United States*, 319 U.S. 41, 42 (1943) (per curiam).

For this reason, we often repeat that "standing is not dispensed in gross." *Town of Chester*, 581 U.S. at 439 (quotation omitted). This means that plaintiffs do not show standing to press *claims* so much as they show standing, within each claim, to seek each

9

*remedy* they ask for. *See id*. To do this, a plaintiff must start by showing that the remedy he seeks aims at a solid-enough injury. Perhaps someone has struck him or taken his property; perhaps someone threatens to sue him; perhaps the government threatens to make him comply with some new rule that will cost him money. Having shown an adequate injury, the plaintiff must then show that the remedy sought is constitutionally adequate redress for that injury. Put another way, the plaintiff must show that the remedy will do something to help him—"that he personally would benefit in a tangible way from the court's intervention." *Warth*, 422 U.S. at 508.

> **1.      Declaratory judgments must redress injuries through preclusion**

Wells's remedy can be characterized as redressing any of four distinct injuries: (1) the state prosecution *currently* pending against him, (2) the possibility of *future* prosecution should he be arrested at a future protest, (3) the possibility of *future* arrest itself, and (4) the arrest that happened in the *past*, in 2020. To understand how each of these theories interacts with our precedent on redressability, it is necessary to consider how declaratory judgments fit into the system of remedies available in the federal courts.

In general, plaintiffs ask courts to redress two broad types of injuries. First, a plaintiff can allege that something befell him in the past. *See, e.g.*, *Martin v. United States*, 145 S. Ct. 1689, 1694–95 (2025) (alleging police "detonated a flash-bang grenade" in wrong-house raid, causing "personal injuries and property damage"). Second, a plaintiff can complain that something might befall him in the future, or might be happening right now. *See, e.g.*, *Free Speech Coalition v. Paxton*, 145 S. Ct. 2291, 2300 (2025) (alleging state may in the future enforce a law imposing fines on websites); *Diamond Alt. Energy,*

10

*LLC v. Env't Prot. Agency*, 145 S. Ct. 2121, 2135 (2025) (alleging state is currently enforcing regulation that suppresses demand for gasoline and costs fuel companies money).

These two types of injury often go with the two remedies perhaps most sought in federal courts: damages and injunctions. Damages redress past injuries by requiring the defendant to pay the plaintiff. Though they may bring a secondary deterrent effect too, the remedial point of damages is to "compensate[] for the wrong done to the plaintiff by the defendant." Samuel L. Bray, *The System of Equitable Remedies*, 63 UCLA L. Rev. 530, 552 (2016) (Bray, *Equitable Remedies*); *see also* 1 Dan B. Dobbs, *Law of Remedies* § 1.1 (2d ed. 1993). But "[c]ompensation . . . operates only after violations have occurred." Bray, *Equitable Remedies*, at 552. Before the violation has occurred, or while it's ongoing, an injunction can prevent it or bring it to a halt. *See id.* at 553.

In the main then, injunctions and damages remedy different sets of injuries.[3] When an injury has yet to occur, but a plaintiff offers good reason to think it will soon (or is occurring, and a plaintiff offers good reason to think it will continue) he can seek redress prospectively through an injunction. *See, e.g.*, *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–60 (2014). But when the complained-of event has come and gone, it is too late for an injunction. *See, e.g.*, *Firewalker-Fields v. Lee*, 58 F.4th 104, 113–14 (4th Cir. 2023). Even so, a plaintiff may be able to use an injunction to ward off a *different* injury: The

---

[3] This is not to say that the distinction between law and equity matches the prospective-retrospective divide. Law includes not just damages but remedies like replevin and ejectment that require a defendant to cease ongoing interference with a plaintiff's property interests. And equity includes restitutionary remedies like constructive trusts that require a defendant to undo the effects of past conduct. *See Rose v. PSA Airlines, Inc.*, 80 F.4th 488, 498–99 (4th Cir. 2023).

possibility that the troublesome event will recur. *See, e.g.*, *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).[4]  But to redress an injury that has already happened, the plaintiff can get only backward-looking relief, like damages.

Declaratory judgments are different.  Unlike damages, which requires the defendant to give the plaintiff money, or an injunction, which requires the defendant to take or forbear from some action, a declaration "does not issue a command to the parties and does not threaten an instantaneous sanction."  Samuel L. Bray, *The Myth of the Mild Declaratory Judgment*, 63 Duke L.J. 1091, 1120 (2014) (Bray, *Declaratory Judgment*).

Indeed, this is why declaratory judgments exist:  to give plaintiffs facing future injuries a remedial option other than injunctions.  *See id.* at 1143.  Like all equitable remedies, injunctions are limited by "the broad boundaries of traditional equitable relief." *Grupo Mexicano de Desarrollo, S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999); *see, e.g.*, *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006) (identifying rules limiting the use of injunction).  And in the early part of the 20th century, some scholars argued that courts should be able to "conclusively declare[] the pre-existing rights of the litigants without the appendage of" an equitable remedy and the constraints that come with it.  Edwin Borchard, *Declaratory Judgments* vii (1934).  Many states agreed and adopted

---

[4] In so doing, the plaintiff might use the past injury as "evidence" that a future one is likely to occur.  *O'Shea v. Littleton*, 414 U.S. 488, 496 (1974).  But this does not redress the past injury; it redresses a distinct, future injury.  A plaintiff may use past injury to justify forward-looking relief, but forward-looking relief remedies only future or ongoing injuries. *See Murthy*, 603 U.S. at 59 ("If the plaintiffs were seeking compensatory relief, the traceability of their past injuries would be the whole ball game.  But because the plaintiffs are seeking only forward-looking relief, the past injuries are relevant only for their predictive value.").

12

declaratory judgment acts; Congress later followed.  *See, e.g.*, H.R. Rep. No. 68-1441, at 1–2 (1925).  The theory behind declaratory judgments is thus that someone who wants to do something but fears it may break the law should not have to get into equity or else "bet the farm . . . by taking the violative action."  *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 129 (2007).  He can instead seek a declaratory judgment as an "alternative to pursuit of [an] arguably illegal activity."  *Steffel v. Thompson*, 415 U.S. 452, 480 (1974) (Rehnquist, J., concurring).  He can "litigate before [he] leap[s]."  Bray, *Declaratory Judgment*, at 1118.

Yet although the Declaratory Judgment Act created a useful alternative to injunctions, it did not "alter the character of the controversies which are the subject of the judicial power under the Constitution."  *Poe v. Ullman*, 367 U.S. 497, 506 (1961) (quotation omitted).  Put another way, a declaration is not a get-out-of-standing-free card.  While Congress can put new remedies into courts' toolboxes, to *use* such a remedy courts still need "a concrete case admitting of an immediate and definitive determination of the legal rights of the parties."  *Aetna Life Ins. v. Haworth*, 300 U.S. 227, 241 (1937).  In other words, "just like suits for every other type of remedy, declaratory-judgment actions must satisfy Article III's case-or-controversy requirement."  *California v. Texas*, 593 U.S. 659, 672 (2021).

To satisfy this requirement—at least as for redressability—a declaratory judgment must "affect the rights of litigants in the case."  *Preiser v. Newkirk*, 422 U.S. 395, 401 (1975) (quoting *North Carolina v. Rice*, 404 U.S. 244, 246 (1971)).  If it does not—if it comes with no future consequences—then *declaratory judgment* is just another way of

13

saying *advisory opinion*. A law-abiding defendant might do as a court says just because a court says it. Yet that doesn't work on the "Holmesian bad man thinking only of legal sanctions." Bray, *Declaratory Judgment*, at 1111. More to the point, "[r]edressability requires that the court be able to afford relief *through the exercise of its power*, not through the persuasive or even awe-inspiring effect of the opinion *explaining* the exercise of its power." *Haaland*, 599 U.S. at 294 (quoting *Franklin v. Massachusetts*, 505 U.S. 788, 825 (1992) (Scalia, J., concurring)).

But what future consequences can a declaration bring? An injunction redresses a future injury by ordering the defendant not to cause it. Or it redresses an ongoing injury by ordering the defendant to stop causing it. Without ordering anyone to do anything, how does a declaratory judgment provide redress?

Declaratory judgments provide redress, and satisfy Article III, thanks to preclusion. A court entering a declaratory judgment affords "specific relief through a decree of conclusive character." *Haworth*, 300 U.S. at 241. In modern language, a declaratory judgment "ha[s] preclusive effect on a traditional lawsuit that is imminent." *Haaland*, 599 U.S. at 293 (quotation omitted). That is what "saves proper declaratory judgments from a redressability problem." *Id.* (quotation omitted). "Without preclusive effect, a declaratory judgment is little more than an advisory opinion." *Id.*; *see also Muskrat*, 219 U.S. at 362 ("[A] judgment [that] will not conclude private parties . . . amounts in fact to no more than an expression of opinion.").

Of course, it is not enough that a declaratory judgment preclusively settles a question; all valid judgments do that. By itself, this does not give he who holds a

14

declaration any "tangible" "benefit." *Warth*, 422 U.S. at 508.  Preclusion provides such a benefit only insofar as it affects lawsuits.  And so, to show that a declaration redresses an injury, the plaintiff must show not *merely* that the judgment carries some preclusive effect—for of course it does—but also that this preclusion is at least "likely" to produce a litigation-related benefit.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *Simon*, 426 U.S. at 38.[5]

To have standing, then, a plaintiff must show both that future litigation is likely to happen (at least absent the declaration sought) and that the declaration's preclusive effect will likely help him in that litigation.  The plaintiff's burden changes "at" each "successive stage[] of the litigation."  *Lujan*, 504 U.S. at 561.  At the pleading stage, a plaintiff must plausibly allege the nature of the anticipated litigation benefit; at the summary-judgment stage, he must "'set forth' by affidavit or other evidence 'specific facts'" that permit a federal court to conclude that the benefit will come to pass.  *Id.* (quoting Fed. R. Civ. P. 56).  Yet of course, litigation is a choice, not an inevitability.  So when the litigation in which the preclusion would help the plaintiff would begin, continue, or present the relevant question only by the choice of someone *other* than the plaintiff, "it becomes the burden of

---

[5] It may be that even at the pleading stage, likelihood alone is not enough.  *See Gutierrez v. Saenz*, 145 S. Ct. 2258, 2269 (2025) (Barrett, J., concurring).  We do not rule out the possibility that Article III requires something more.  But we do hold that Article III requires *at least* this much.  Wells's case requires us to go no further.

the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to . . . permit redressability of injury." *Id.* at 562.

Consistent with these principles, plaintiffs normally seek declaratory judgments in federal court for one of two reasons. The paradigm case for a declaratory judgment action is a defensive suit brought by the party who would be the defendant in a hypothetical future case. The point of these actions is to test the declaratory plaintiff's defense ahead of time. *See, e.g.*, *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 248 (1952); *Medtronic, Inc. v. Mirowski Fam. Ventures, LLC*, 571 U.S. 191, 197 (2014).[6] In actions for defensive declarations like these, we require a "genuine threat" that the declaratory defendant will bring the future suit—or would do so, but for the declaratory plaintiff's decision to test his defense first. *MedImmune*, 549 U.S. at 129. Without showing a sufficiently definite "risk of suffering penalty, liability or prosecution, which a declaration would avoid," a plaintiff has no standing to seek one. *Wycoff*, 344 U.S. at 245–46.[7] And of course, a plaintiff likewise lacks standing if he cannot show that the preclusive effect of the declaration would

---

[6] Declaratory plaintiffs may seek to test defenses for both civil suits, *see Medtronic*, 571 U.S. at 197, and government enforcement proceedings, *see Susan B. Anthony List*, 573 U.S. at 158.

[7] Of course, if a plaintiff seeks and gets a declaration that would settle an impending lawsuit, that declaration will likely stave off the lawsuit. Why sue the declaratory plaintiff if you know you'll lose? Or, if the lawsuit where the preclusive effect does work is the declaratory plaintiff's own, the defendant may see the writing on the wall and settle once a court enters an unfavorable declaratory judgment. In insisting that the plaintiff show litigation is imminent, we do not contradict this empirical observation. We instead require a plaintiff to show that the litigation in which preclusion would help him will "likely occur or continue" *if* it goes "unchecked by the litigation" in which the plaintiff seeks a declaration. *Friends of the Earth, Inc. v. Laidlaw Env't Servs.*, 528 U.S. 167, 190 (2000). If the judgment then prevents or settles *that* litigation, the plaintiff has gotten redress.

16

help him should the lawsuit come to pass. But if a plaintiff can show that the declaration he seeks is likely to "*finally and conclusively resolve* the underlying controversy," *MedImmune*, 549 U.S. at 127 n.7 (citing *Calderon v. Ashmus*, 523 U.S. 740, 749 (1998)), then he may seek one ahead of time.

The second standard use of declaratory judgments is offensive rather than defensive. That is, a plaintiff can aim at future or ongoing injuries not only by seeking a declaration to forestall somebody else's suit, but also by getting a legal ruling that he can someday use in a lawsuit of *his own*. *See, e.g.*, *Gutierrez*, 145 S. Ct. at 2262; *Reed v. Goertz*, 598 U.S. 230, 234 (2023). Yet like defensive declarations, these offensive declarations provide redress only if they come with preclusion. This means the plaintiff needs to get a declaration that will bind the party he would sue. *See, e.g.*, *Haaland*, 599 U.S. at 291–93. And because preclusion is the linchpin, the plaintiff must also offer reason to think the future suit where he wants to use the preclusion will come. The future suit is *his*, so this should be easy to show. *Cf. Lujan*, 504 U.S. at 564. But without meeting both these burdens, a plaintiff cannot show himself likely to use the preclusive effect of the declaration and so cannot show redressability.[8]

---

[8] It makes no difference, the Court made clear in *Haaland*, that someone might follow a declaration because he is "persuade[d]" by the court's "opinion" rather than obligated by its "judgment." 599 U.S. at 294. Even if he followed for a while, cowed by the "awe-inspiring effect" of a judicial opinion, he could always renege. Not subject to preclusion, he could ignore the declaration and later litigate its correctness for themselves. In such a situation, to use *Reed*'s terms, the declaration would work no enforceable "change in a legal status." 598 U.S. at 234.

17

With this background in hand, we next consider whether the declaration Wells seeks provides constitutionally adequate redress.

### 2.      The declaration Wells seeks provides no redress

From what we have said so far, it should be clear that Wells cannot seek a declaration just because he wants vindication for what happened to him. "It is not enough that a plaintiff wishes to have the moral satisfaction of a judicial ruling that he was right and his adversary was wrong; the relief sought must have legal effect in determining the present and future rights and obligations of the parties." *Utah Animal Rts. Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1263 (10th Cir. 2004) (McConnell, J., concurring). Our question is "whether the relief sought would, if granted, make a difference to the legal interests of the parties[,] as distinct from their psyches." *Air Line Pilots Ass'n, Int'l v. UAL Corp.*, 897 F.2d 1394, 1396 (7th Cir. 1990) (cleaned up).

A declaration that Johnson's arresting Wells broke the law might carry preclusive effect in four distinct ways. Each corresponds to a distinct injury—three future or ongoing, and one past. These are the threat of future prosecution, the threat of ongoing prosecution, the threat of future arrest, and last the actual 2020 arrest. We consider these possibilities in turn and hold that Wells cannot get constitutionally adequate redress for any of these injuries via the declaration he seeks.

Start with redress for prosecution. Getting a declaration to fend off prosecution lies in classic defensive-declaration territory. *See Steffel*, 415 U.S. at 475. But the declaration Wells seeks does not provide constitutionally adequate redress with respect to either the ongoing prosecution or any future prosecution for the same reason: Wells has sued the

18

wrong defendant. In most every case, only parties to lawsuits are "bound by a judgment." *Hansberry v. Lee*, 311 U.S. 32, 40 (1940). Whatever preclusive effect Wells could get from a declaration would thus bind Johnson, the defendant Wells sued. And it might bind Johnson's employer—Alamance County—too, since Wells sued Johnson in his official capacity. *Compare Sunshine Anthracite Coal Co. v. Adkins*, 310 U.S. 381, 403 (1940) (official capacity; yes preclusion), *with United States v. Lee*, 106 U.S. 196, 222 (1882) (personal capacity; no preclusion); *see also* 18A Wright & Miller, *Fed. Prac. & Proc.* § 4458 (3d ed. Supp. 2022). But North Carolina, not Johnson or Alamance County, is prosecuting Wells (and would prosecute him in the future). So even if Johnson's relationship with the County justified "nonparty preclusion," *Taylor v. Sturgell*, 553 U.S. 880, 892–95 (2008), we have no reason to think a judgment against him would bind the State. And without preclusion against the State, a declaration offers no redress for prosecution.

Next, take the possibility that the declaration Wells seeks could redress a future arrest. Once again, in principle, this is the sort of injury a declaration can redress. Wells claims that without a declaration, he "is uncertain as to how he can exercise his constitutional rights when speaking and acting during future protests." J.A. 28. Yet if a court declared today that what Wells did in 2020 is protected by the First Amendment, then Wells could protest again—knowing that if the police interfered with his speech, he could sue and they would be estopped from denying his First Amendment rights. This would be an offensive, rather than defensive, use of a declaratory judgment.

19

But here again, Wells has problems.  For one, Wells does not allege any "concrete plans" to protest in the future—just vague "some day intentions."  *Lujan*, 504 U.S. at 564 (cleaned up).  For another, even if he protested again, what's to say that would risk arrest?  To be sure, "[p]ast exposure to illegal conduct" can be "evidence" that the illegal conduct may recur.  *O'Shea*, 414 U.S. at 495–96.  But standing alone, past exposure "does not" "show a present case or controversy."  *Id.* at 495.  And Wells makes no effort to connect the dots.  On the contrary, he alleges that Alamance County "has typically exercised its discretion *not* to arrest protestors for conduct similar to [his]."  J.A. 26 (emphasis added).  And last, even if he again faced arrest and again sued, Wells does not say why Johnson is the defendant against whom he would need preclusion.  Wells gives no reason to think he will again protest *in Alamance County* or be arrested *by Johnson himself*.  Yet if he protested elsewhere or faced arrest from officers belonging to another agency, no preclusive effect from this case would help him.  Without these missing allegations—and, since he's had discovery, *evidence*—Wells does not "show a present case or controversy." *Lyons*, 461 U.S. at 102 (quoting *O'Shea*, 414 U.S. at 495–96).[9]

This leaves the possibility that a declaration might redress the past injury:  the arrest Wells suffered in 2020.  Unlike the future injuries already discussed, this past injury falls outside the traditional role of declaratory judgments as preludes to, or substitutes for,

---

[9] Wells's failure to allege definite plans to protest in the future also gives us a second reason to reject the theory that he could use a declaration to ward off *prosecution* for conduct at a future protest.  Without a "genuine threat" that the anticipated lawsuit will happen, a plaintiff lacks standing to head it off by seeking a declaration, *MedImmune*, 549 U.S. at 129, even if he's named the defendant against whom he would use the judgment's preclusive effect should that litigation happen.

injunctions.  As explained, declarations normally reach into the future.  If a plaintiff wants to redress some future or ongoing injury but does not want or cannot get an injunction, he can seek a declaration instead—and if that does not deter the defendant, he can go back to court for an injunction.  Bray, *Declaratory Judgment*, at 1110–11; 28 U.S.C. § 2202.  In that injunction proceeding, the defendant will be issue-precluded from denying that his proposed (or ongoing) conduct breaks the law.  The declaration is thus a preclusive weapon that either deters litigation or helps win it.

By contrast, plaintiffs who have suffered injury in the past seldom need preclusion.  They need compensation, and declaratory judgments are not compensatory.  Using a declaration to redress a past injury is not *conceptually* incoherent—as it would be to enjoin someone to stop a harm that has already ended, or to pay damages as compensation for harm that has not yet occurred.  But without some unusual situation where the plaintiff can show that he needs the preclusive effect of a declaration even though the injury he complains of has already occurred, a declaration aimed into the past would be only hortatory—a judicial announcement that a past event broke the law—and therefore provide no redress.[10]

Rather than make this showing, plaintiffs who have suffered past injuries but do not want (or cannot get) traditional remedies like compensatory damages usually turn to

---

[10] Sometimes, plaintiffs ask a court to award both damages and a declaration as redress for past injuries—just as plaintiffs sometimes ask a court to give both "declaratory and injunctive relief" as redress for future injuries.  But before a court awards damages or grants an injunction, it necessarily declares that something did (or would) break the law.  Once the court enters a coercive judgment, then, the request for a declaratory judgment (Continued)

another remedy: *nominal* damages. In *Uzuegbunam v. Preczewski*, the Supreme Court observed that, long before the Declaratory Judgment Act, plaintiffs have used nominal damages to "obtain a form of declaratory relief" with respect to "past injury." 592 U.S. at 285–86 (quotation omitted). But despite superficial similarity to declaratory judgments, nominal damages provide redress in a very different way. Nominal damages "provide redress" "[b]ecause nominal damages are in fact damages paid to the plaintiff." *Id.* at 291. Even a single dollar carries great constitutional significance: "Despite being small," nominal damages still make "money chang[e] hands" and thus provide constitutionally adequate redress. *Id.* at 290–91 (quoting *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 377 (2019)).

To be sure, we have never conclusively ruled out the possibility that a plaintiff can redress a past injury by seeking a declaration alone. Though the Supreme Court and this Court have strongly suggested as much. *See Green v. Mansour*, 474 U.S. 64, 73 (1985) (reasoning that because no remedies *but* a declaration are available, it would be "improp[er]" to grant one); *California*, 593 U.S. at 673 ("[A] declaratory judgment . . . is the very kind of relief that cannot alone supply jurisdiction otherwise absent."); *Comite de*

---

becomes "duplicative." *Bank of Lake Tahoe v. Bank of Am.*, 318 F.3d 914, 918 n.4 (9th Cir. 2003); *see* Bray, *Declaratory Judgment*, at 1121 ("[O]ne could see every decision by a court, including every decision paired with an injunction, as containing something like an implicit declaratory judgment about how the law applies to specific facts."). In such cases, it may be formally true that a plaintiff lacks standing to seek a declaratory judgment because he cannot show that the preclusive effect would help him. But because he can get the very same declaration as part of a claim for damages or injunction—for which the plaintiff would have standing—this point carries no practical significance. It is thus only when a plaintiff seeks a declaration alone that this problem will likely rear its head.

*Apoyo a los Trabajores Agricolas v. U.S. Dep't of Lab.*, 995 F.2d 510, 513 (4th Cir. 1993) ("By itself, a declaratory judgment cannot be the redress that satisfies the third standing prong.").

But past decisions have also left a crack in the door. As explained, a declaratory judgment might in theory redress a past injury under the same conditions that it would redress a future injury: by carrying useful preclusive effect. And in *Green*, the Court suggested that a declaration "would be useful" in remedying a past injury "*only if* it might be offered in state-court proceedings as res judicata on the issue of liability, leaving to the state courts only a form of accounting proceeding." 474 U.S. at 73 (emphasis added). Yet the Court had no need to say for sure because the suit was otherwise barred by sovereign immunity. *Id.* Likewise, in *Comite de Apoyo*, plaintiffs seeking only a declaration urged that the declaration would preclude a nonparty from "challenging [their] backpay claim in arbitration" and thus "enable them to gain an arbitration backpay award." 995 F.2d at 513. Yet there too, we did not need to decide whether this was adequate redress; the nonparty against whom plaintiffs sought backpay would not be subject to the preclusive effect of the judgment. *Id.* at 514.

We have serious doubts that this works—that a plaintiff can get constitutionally adequate redress from a declaration alone by claiming that he will use it to estop the defendant from contesting liability in a damages action that the plaintiff might bring down the line. To start, this would dissolve *Uzuegbunam*'s careful distinction between asking for a dollar and not. Given the importance the Court placed on that point, this work-around seems unjustified. Treating such a claim as justiciable would also undermine mootness

23

caselaw. The Court has often found mootness when the plaintiff seeks a declaration but not damages and any future injury is too remote to redress. *See, e.g.*, *Preiser*, 422 U.S. at 402; *Murphy v. Hunt*, 455 U.S. 478, 481 (1982); *see also Incumaa v. Ozmint*, 507 F.3d 281, 286–87 (4th Cir. 2007). Yet if a plaintiff could seek a declaration merely as a predicate for damages and thus redress a past injury, these cases are wrong. What's more, the Court has often reiterated that declarations are not tools for piecemeal litigation. *See, e.g.*, *Calderon*, 523 U.S. at 749 (holding nonjusticiable a claim for declaration that "would not completely resolve" the case but "would simply carve out one issue in the dispute for separate adjudication"); *Coffman v. Breeze Corp.*, 323 U.S. 316, 323–24 (1945) (holding nonjusticiable a claim for declaration that statute could not constitutionally require plaintiff's licensee to transmit royalties to the government because plaintiff did not also "seek[] recovery of the royalties"). Yet breaking litigation into pieces is exactly what would happen in a case like Wells's, where a declaration that the defendant's conduct broke the law couldn't even settle whether damages are available because of immunity doctrines. *See Hewitt v. Helms*, 482 U.S. 755, 763 (1987) (explaining that declaratory judgment "would not definitively settle the controversy" in case where "immunity might still preclude liability" (quotation omitted)). Perhaps for these reasons, some of our sister circuits have concluded that declarations cannot be used for this purpose. *See, e.g.*, *Diei v. Boyd*, 116 F.4th 637, 642 43 (6th Cir. 2024); *Justice Network v. Craighead Cnty.*, 931 F.3d 753, 764 (8th Cir. 2019); *see also Utah Animal Rts. Coal.*, 371 F.3d at 1265–66 (McConnell, J., concurring). This result makes sense in practice: Plaintiffs can usually cover the waterfront by seeking either an injunction or damages, and under *Uzuegbunam*,

24

nominal damages can most always allow a plaintiff to get declaratory relief for past injuries.

But we need not settle this question today. At the very least, a plaintiff who wants to use a declaration as a preclusive predicate for a damages action must do what every other declaratory plaintiff must do. That is, he must either allege or show that the preclusion is likely to help redress his injury by doing some work in future litigation.[11] Wells does not. To our knowledge, his only pending suit is this one. He has not alleged that he will—and we see no reason why he would—file a separate damages action against Johnson. Nor has he offered the evidence required to support standing after discovery. And indeed, we doubt that these options are even open to Wells. Wells represented at argument that he sued before criminal proceedings against him had concluded because North Carolina's statute of limitations had almost run. Oral Arg. 18:50–19:10; *see also* N.C. Gen. Stat. § 152-13. Assuming that this is true—that any claim Wells could bring accrued in 2020, and that nothing tolls the limitation period (both questions we need not decide)—then this would mean it's now too late for him to bring a new action. And if there can be no new action, there can be no preclusive effect from a declaratory judgment.

---

[11] Among other things, a plaintiff wishing to carry this burden must show that his declaratory judgment action would likely not prevent him from bringing a later damages action by dint of claim preclusion. *Compare Dionne v. Mayor & City Council of Balt.*, 40 F.3d 677, 683 (4th Cir. 1994) ("[C]laim preclusion . . . forc[es] a plaintiff to raise all possible theories of recovery and to demand all desired remedies in one proceeding."), *with* Restatement (Second) of Judgments § 33 cmt. c (A.L.I. 1982) (noting that some jurisdictions have adopted a limited exception to claim-preclusion rules for certain declaratory judgment actions).

We therefore hold that the declaration Wells seeks does not offer constitutionally adequate redress. For this reason, Wells cannot seek it in federal court.[12]

### B.    Without Jurisdiction, The District Court Must Remand To State Court

The district court entered summary judgment for Johnson on the merits. But it lacked jurisdiction to enter that judgment, so we must vacate it. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 76–77 (1996).

Normally, after vacating, we would remand the case to the district court. Then that court would have to dismiss the case *without* prejudice. *Goldman v. Brink*, 41 F.4th 366, 369 (4th Cir. 2022). But this case complicates that usual practice. Recall that Wells did not choose to proceed in federal court. He filed in state court, and Johnson removed to federal court. And when a federal district court lacks jurisdiction in a case removed from state court, it cannot dismiss. It must instead remand the case to state court. 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."); *see Int'l Primate Prot. League v. Adm'rs of Tulane Educ. Fund*, 500 U.S. 72, 89 (1991). Given this, Wells argues, we should correct the district court's mistake by instructing it to remand the case.

Not so fast, Johnson says. He advances two reasons why even if the district court erred in entering judgment, we should let that error lie.

---

[12] It may well be that doctrines other than standing also rule out the declaration Wells seeks. But because we conclude that no federal court *could* have decided Wells's case as he pleaded it, we do not consider whether any other doctrines, such as abstention, would produce the same result.

26

First, he points out, § 1447(c) says nothing about mandatory remands *after* final judgment. True enough, as far as it goes. But we have already decided that when a district court detects a jurisdictional problem in a removed case but dismisses rather than remanding, and we correct that mistake on appeal, the proper course is to vacate and remand with instructions to remand to state court. *Roach v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 74 F.3d 46, 49 (4th Cir. 1996). Of course, in a case like *Roach*, the district court's dismissal is a final judgment. So were Johnson right, *Roach* would be wrong. Needless to say, we are in no position to second-guess that precedent.

Second, Johnson claims that remand would be pointless because North Carolina uses justiciability rules akin to their federal counterparts. Maybe—we take no position on that point. For here too, Johnson runs into *Roach*. In that case, we squarely held that there is no "futility" exception to § 1447(c) remands. *Roach*, 74 F.3d at 49. If the federal court lacks subject matter jurisdiction, it *must* remand the case.

Unpersuaded by Johnson's objections, we will do as Wells asks.

\*         \*         \*

Declaratory judgments are useful remedies. By letting people "litigate before [they] leap," Bray, *Declaratory Judgment*, at 1118, they can save time and money for parties and courts alike. But like all remedies, declarations must be used consistent with Article III. That means a plaintiff seeking one must show that it will help him. Because Maurice Wells has not done so, the judgment is

*VACATED AND REMANDED WITH INSTRUCTIONS.*

27